The Honorable Arthur Carter State Representative 301 Mountain Street Berryville, Arkansas 72616
Dear Representative Carter:
This is in response to your request for an opinion concerning the administration of hotel and restaurant gross receipts taxes by the Eureka Springs Chamber of Commerce. Specifically, you have attached a letter from the Commercial Club of Eureka Springs, together with several other documents, which indicates that Eureka Springs has a City Advertising and Promotion Commission, (CAPC), which has "hired" or presumably contracted with the Eureka Springs Chamber of Commerce to administer the expenditure of the two percent gross receipts tax collected on the proceeds of hotel rentals, restaurant receipts, and gift shop sales.
The letter indicates that approximately two hundred thousand dollars a year of the tax proceeds goes to the Chamber of Commerce to pay for the programs and services which it administers for the city. The letter then indicates that most of the tax funds paid to the Chamber go to fund operation of a "Tourist Information Center," which the letter indicates not only provides information to visitors, but provides services to local business owners which are vital to the operation of their businesses. The problem, as stated in the letter, is that the Chamber of Commerce provides these "services" free to Chamber members, but charges a fee to non-members. This policy has prompted the following question:
 Can the Chamber of Commerce, as agents of a tax collecting body, legally deny access to the services paid for by that tax money to possible users of those services solely on the basis of membership or non-membership in a private organization? Furthermore, is it legal for a users fee to be charged to only certain users of these services and not others based solely on membership in a private organization?
It is my opinion, for the reasons that follow, that if indeed the Chamber of Commerce is denying access to services provided through tax dollars to businessmen who do not wish to become members of the Chamber of Commerce or otherwise pay a fee to receive these services, a colorable illegal exaction claim may arise, (see generally, Arkansas Constitution, art. 16, § 13,) as well as other valid constitutional objections. I should stress, however, that after a thorough review of all the documents you have enclosed, we cannot determine whether in fact the services in issue are provided through the use of tax funds. This is a question of fact which this office is neither equipped nor empowered to investigate and resolve.
I assume that the "hotel and restaurant" tax is collected in the City of Eureka Springs under the authority of A.C.A. § 26-75-701et seq., because the tax is imposed on sales of gift shops. Section 26-75-705 provides, as to the use of these tax dollars, that they shall be credited to the city advertising and promotion fund and used in accordance with the provisions of A.C.A. §§26-75-602—26-75-613. Section 26-75-606 provides that the funds shall be used for advertising and promoting the city, for the construction or operation of convention centers or for tourist promotion facilities, or tourist oriented facilities, and or the arts. See A.C.A. § 26-75-606, as amended by Acts 726 and 1178 of 1991. Section § 26-75-606 (a)(3)(1)(C) provides that such taxes shall not be used "[f]or general subsidy of any civic groups or the chamber of commerce." Section § 26-75-606 (a)(3)(2) provides that: "However, the advertising and promotion commission may contract with such groups to provide to the commission actual services that are connected with tourism events or conventions."
It thus appears that the CAPC has authority to contract with the Chamber of Commerce for the provision of actual services. One of the documents enclosed with your request shows a breakdown of the expenses the Chamber incurred in connection with the administration of CAPC business. The expenses have been "pro rated" between the Chamber and the CAPC; that is, when money is expended, for example, for the salary of the Executive Director of the Chamber, the expense is pro rated based presumably upon how much of the Director's time is spent attending to CAPC business as opposed to Chamber business. Eighty percent of this salary is allocated to the CAPC. Other expenses, such as office supplies, utilities, and telephone expenses are pro rated in a similar fashion.
The list of services which is enclosed and which the Commercial Club contends are paid for by city tax dollars do not appear as specific expenses on the itemized list of pro rated expenses. In fact, at least three of the services, (listing in the visitors guide, advertising in the visitors guide and advertising in the group tour planner), appear to be funded entirely exclusive of city tax dollars, as they are shown on the pro rated expense sheet in 1990 and 1991 as having a zero balance charged to the city. It is impossible for this office to make a determination as to whether any tax dollars are being used to provide any of the services, or whether these services are provided entirely through the resources of the Chamber of Commerce. This question will have to be addressed, if necessary, to a court having authority to take evidence and weigh all of the relevant facts and circumstances.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:arb